

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. C-5769
Re: Issuance of warrants in pay-
ment of traveling expense
accounts of members of the
Board of Regents and the
presidents of the various
teachers colleges when such
expenses are to be incurred
in connection with a meeting
in Mexico.

Your letter of December 15, 1943, reads in part as
follows:

"I have a letter from the President of the
Board of Regents of the seven Teachers Colleges
stating that the Board of Regents and Presidents
of such colleges passed a resolution at their
last meeting to hold their spring meeting at
Victoria, Mexico, for a joint meeting with edu-
cators and executives of Mexico. It is contem-
plated that a meeting with the prominent educa-
tors and officials of Mexico will be one of the
most constructive things to be undertaken by our
teachers colleges.

"He has requested of this department infor-
mation as to whether warrants would issue in pay-
ment of traveling expense accounts to the members
of the Board of Regents and the Presidents of the
various teachers colleges to the proposed meet-
ing in Victoria, Mexico.

"I will thank you to advise me the cor-
rect answer to make to this letter."

We are informed that at a regular meeting, the
Board of Regents of the State Teachers Colleges adopted the
following resolution:

"RESOLVED, That due to the fact that (1)
the San Houston State Teachers College is en-
gaged in making plans for the continuation of
a Field School in Puebla, Mexico; (2) the
Southwest Texas State Teachers College is plan-
ning to open a Field School in Guadalajara,
Mexico, this summer; (3) the Sul Ross State
Teachers College is planning to open a Field
School in Chihuahua, Mexico, this summer; and
(4) all the Texas State Teachers Colleges are
directly interested in the exchange of stu-
dents with Mexico:

"THEREFORE, BE IT RESOLVED, That the
Board of Regents of the Texas State Teachers
Colleges and the Presidents of these institu-
tions shall hold a meeting during the Easter
holidays, 1944, at Victoria, Mexico, or some
suitable place in Mexico to confer with the
officials of the Teacher Training Institutions
of Mexico relative to the problems indicated."

We are also informed that plans are now in progress
for the opening of a Field School by the North Texas State
Teachers College at Morelia, Mexico, and by the Stephen F.
Austin State Teachers College at San Luis Potosi, Mexico. The
operation of these Field Schools has been described by Mr.
Harmon Lowman, President of the San Houston State Teachers
College, as follows:

"The college students interested in the
field school register and pay the fees on our
campus prior to going to Mexico just as our
regular students matriculate. Our instructors
accompany them to Mexico. The Mexican officials

furnish us classrooms free of charge. This
summer we plan to offer Spanish language,
Mexican music, and Latin American history
. . . the students receive regular college
credit just as in the case of resident stu-
dents . . .our institutions conduct these
schools independently of the Mexican col-
leges. We are granted the free use of their
facilities. The proposed trip is to arrange
for the free use of these Mexican facilities
and enter into discussions relative to liv-
ing quarters for students and the like . . ."

Art. 2647 (6) V.A.C.S., provides in part as follows:

"The board shall meet each year in Austin,
on the first Monday in May, or as soon there-
after as practicable, for the transaction of
business pertaining to the affairs of the
State normal schools, and at such other times
and places as a majority of the members of
the board deem necessary for the welfare of
said colleges. . ."

If the meeting in Mexico were to be a "business meet-
ing" of the type covered by the above Article, we seriously
doubt whether such meeting could legally be held, since clauses
such as "and at such other times and places as a majority of
the board shall deem necessary" have generally been limited as
if they read "at such other places within the State." See
McCullough vs. Scott, 182 N. C. 865, 109 S. E. 789. However,
it appears that the proposed "meeting" is not in fact a busi-
ness meeting of the type contemplated in Article 2647 (6), but
rather that it is in the nature of a joint conference between
the board and the presidents on the one hand and the Mexican
officials on the other. The fact that the presidents are in-
cluded in this "meeting" strengthens our belief that the gather-
ing is not a business meeting of the board of the type compre-
hended by Article 2647 (6).

Subsection (6) of the General Provisions of the Ed-
ucational Appropriation Bill, S. B. 33, Acts of the 48th Legis-
lature, R. S., 149, provides in part as follows:

". . . No traveling expenses shall be
incurred by board members, heads of institu-
tions, or by any employee of any of the schools,
or other agencies named herein, inside or out-
side of the boundaries of the State of Texas,
except for State business . . . ."

The legislatures of Texas have never undertaken to
define "state business" as that term has been employed in con-
texts similar to that above. In general the government of the
various educational institutions has been entrusted to the re-
spective boards of regents, and to such boards have been del-
egated broad and comprehensive powers. It is manifest that the
boards are in a superior position to know and understand, and
to accomplish, the successful management and government of their
institutions. The presumption is always in favor of the reason-
ableness and legality of that which they do. As was said by the
Commission of Appeals in the case of Foley vs. Benedict, 55
S. W. (2d) 805, "the courts will not interfere therewith in the
absence of a clear showing that they have acted arbitrarily or
have abused the authority vested in them." This department has
always considered itself restrained, as are the courts, in over-
turning the deliberate and considered acts of those entrusted
with, and peculiarly equipped for, the administration of the
various State educational institutions. In our opinion No.
O-1195 we stated:

"'State's business', as relates to the au-
thority of a department to incur traveling ex-
penses to be paid by the State, seems to embody
at least the following elements:

"1. A reasonable, substantial, and direct
relation between the business to be transacted
on the trip and the accomplishment of the func-
tions of government entrusted to the particular
department.

"2. A reasonable, substantial, and direct
relationship between the method by which the
particular business is intended to accomplish
the function of government entrusted to 'the

department, and the powers granted the de-
partment by law for the accomplishment of
such functions.

". . . .

"Of course, as between the two extremes,
there must necessarily be some zone of doubt,
where the judgment of the department heads,
under the sanction of their official oaths,
becomes the only practicable criterion by
which the question whether the State's busi-
ness is involved in the particular trip may
be determined."

Acting on these principles, this department has ruled
that the head of a state educational institution was on State's
business while attending a meeting in Atlanta, Georgia, of the
Southern Association of Colleges and Secondary Schools (Opinion
No. 0-2084), that the head of a State school of engineering was
on State's business while attending a meeting in New York City
of the American Society of Mechanical Engineers (Opinion No.
0-4267), that the head of the husbandry department of a State
School was on State's business while attending in Toronto,
Canada, an Inter-American conference for the dairy industry
(Opinion No. 0-4756), that a professor of animal husbandry in
a State school was on State's business while attending the
American Royal Livestock Show (Opinion No. 0-1195), and that a
professor in the State University was on State's business while
attending in San Francisco a meeting of the Adult Education
Section of the National Education Association. (Opinion No.
0-4387).

The proposed conference is for the purposes of dis-
cussing the problems of the exchange of students with Mexico
and of the establishment and continuance of summer Field Schools.
Art. 2654 (e) specifically authorizes the governing boards of
the various educational institutions to exempt certain students
from other nations of the American continents from the pay-
ment of tuition fees. The emergency clause of this legislation
(Acts 1941, 47th Leg., R.S., p. 38, ch. 25, (2) expresses a
legislative belief that "by extending the facilities of the

higher educational institutions of this country to students
of other nations, a mutual respect and understanding of the
people of this country and of the other nations of the con-
tinent will be fostered." Insofar as the proposed con-
ference relates to a discussion of an exchange of students
with Mexico, we feel that it clearly is State business.

In view of the broad powers possessed by the Board
of Regents over the curricula of the State Teachers Colleges
and the latitude with which the courts have interpreted these
powers, we are unable to say that traveling expenses incurred
in connection with the establishing or maintaining of the
summer Field Schools are not incurred in connection with
State business.

Consequently, you are respectfully advised that
warrants may be issued in payment of traveling expenses in-
curred in connection with the conference above discussed.

Trusting that the foregoing answers your inquiry,
we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  /s/
R. Dean Moorhead
Assistant

RDM:ff:Bb

APPROVED MAR. 11, 1944
/s/ G. P. Blackburn
ACTING ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE.